[No. 1559.]

## STANTON, THOMPSON & CO., APPELLANTS, v. E. CRANE, ET AL., RESPONDENTS.

MOTION FOR NEW TRIAL—TIME OF FILING IN EQUITY CASE. In a chancery case, where a jury has been called to find an issue of fact, the case is not tried until the chancellor passes on the verdict, and files his findings; and consequently the time for a motion for a new trial begins to run from this filing.

PRACTICE ON APPEAL—CONFLICTING EVIDENCE. In an action to set aside a conveyance as fraudulent against creditors, a finding based on conflicting evidence will not be disturbed on appeal.

PUBLIC LANDS—GRANTS TO RAILROADS—VESTING OF TITLE. Title under the Central Pacific land grant passed to the railroad when the line was definitely fixed, and a transfer subsequent to that time, but before the railroad received a patent, passed title.

FRAUDULENT CONVEYANCE—CONSIDERATION—POSSESSION. Where a grantee holds the equitable title to land under a quitclaim deed and transfer of possession for valuable consideration, a subsequent conveyance without further payment is not a voluntary conveyance without consideration, for the reason that such conveyance could be compelled in a court of equity.

IDEM—IDEM—VOLUNTARY. A transfer which the law would compel a party to make is not voluntary. Neither is the transfer by the holder of the legal title to the equitable owner, although without pecuniary consideration, a voluntary conveyance, and therefore fraudulent as to creditors.

APPEAL from the Second Judicial District Court, Washoe County; A. E. Cheney, Judge.

Bill in equity by Stanton, Thompson & Co. against E. Crane and others. From a judgment for defendants, plaintiffs appeal. Affirmed.

The facts sufficiently appear in the opinion.

*Trenmor Coffin* and *L. T. Hatfield*, for Appellants:

I. Respondents' motion to dismiss this appeal, upon the ground that the notice of motion for a new trial and the statement on the motion were not filed in time, is not well founded. Counsel contends that the case was tried by a jury and that the motion and statement were not within the statutory time after the rendition of the verdict. Appellant contends that it was an equity case tried before the court. That the chancellor called a jury to assist him by finding one special issue which was submitted to it, but which was

not adopted or accepted by the court until the rendition of the final decree. Counsel for respondents do not suggest that the notice of motion for new trial or statement were not in time if the time began to run only after the entry of the decree of the court. The point has been directly and squarely decided by this court. In an equity case, although a jury may be called to find special issues, the time to move for a new trial, file a statement or to take any necessary steps looking toward a review of the case, begins to run from the filing of the findings and entry of the final decree. (*Duffy* v. *Moran*, 12 Nev. 94.)

II.   The quitclaim deed given by E. Crane to Mrs. Howard in February, 1876, did not and could not convey the after-acquired government title. The deed to Mrs. Howard in 1892 was purely voluntary, entirely without consideration. As testified to by E. Crane in *Thompson* v. *Crane*, 73 Fed. Rep. 327, and as found by the court, was given to her in order to distribute his property among his children. The execution of the deed left E. Crane without property out of which plaintiffs could satisfy their execution. (*Thompson* v. *Crane*, 73 Fed. Rep. 327.)

III.   The alleged deed from Crane to Mrs. Howard, dated February 19, 1876, was a quitclaim deed. The evidence adduced at the trial shows beyond question that the title had not passed from the United States at that time. That subsequently the federal title was divested and was involved in a conveyance directly to Crane himself, and that he paid four hundred dollars for the title, being one hundred and fifty dollars more than the alleged consideration in the deed to Mrs. Howard, and which effectually destroys any element of valuable consideration from her to him. The evidence shows that from the date of the conveyance to Crane of the Howard forty, every hour until the conveyance was made to her in 1892, Crane exercised every element of ownership that was exercised in relation to that property. Upon the question of want of title in Mrs. Howard, in addition to the elementary doctrine controlling quitclaim deeds and their effect, the following authorities are deemed to be conclusive against the claim of title in Mrs. Howard. A quitclaim deed does not convey a subsequently acquired title of the

vendor to the property. (*Morrison* v. *Wilson*, 30 Cal. 344; *Anderson* v. *Yoakum*, 94 Cal. 227–8.)

IV. The latter, a case wherein the habendum clause of a quitclaim deed it was covenanted that any after-acquired property should vest in the grantee. It is clear creditors can receive benefit of adverse possession of real estate of debtor if the circumstances are such as would enable the debtor to assert title. Upon the adverse possession, we submit the following authorities as conclusive against both Mrs. Stiles, formerly Dawes, and Mrs. Howard. If the plaintiff shows that his possession has been continued for a period long enough to bar an action for recovery, he establishes a title by prescription, and upon such proof, the burden is thrown upon the defendant to show his right to retain the possession. (*Goodwin* v. *Scheerer*, 108 Cal. 690.)

*Wren & Julien*, for Respondents:

I. The guarantee of Crane to plaintiffs was not executed until May, 1892, sixteen years after the conveyances were made by Crane to his daughters. A subsequent creditor who becomes such with knowledge or notice of a conveyance made prior to his becoming such creditor cannot, ordinarily at least, attack it as fraudulent. (Am. & Eng. Ency. of Law, vol. 8, p. 752; *Baker* v. *Gilman*, 52 Barb. N. Y. 39; *Lehmberg* v. *Beiberstein*, 51 Tex. 457; *Monroe* v. *Smith*, 79 Pa. St. 459; *Herring* v. *Richards*, 3 Fed. Rep. 443.) The rule requiring change of possession does not apply to real estate. (Am. & Eng. Ency. of Law, vol. 8, p. 756; *Phittiplace* v. *Sayles*, 4 Mass. (U. S.) 321.)

II. The deed from E. Crane to Mrs. Stiles was a bargain and sale deed given upon a good consideration, viz.: five hundred dollars, and in part compliance with promises made by E. Crane to his daughter before they left the east together and for the purpose of keeping her near him at the ranch in Washoe county and of settling his property in part upon her during his lifetime at a time when he was free from debt and in prosperous circumstances, and was made without any intention to hinder, delay or defraud the holder of the note against Burke and himself, and was a good and valid conveyance against the only party to whom he was under any

obligation, and is certainly good and valid as against the plaintiffs in this case.

III.   The conveyance to Mrs. Howard, of date February 19, 1876, was made substantially under the same circumstances that the conveyance to Mrs. Stiles was made, but it was a quitclaim deed.   Some time prior to the making of this conveyance E. Crane had entered into a contract with the Central Pacific Railroad Company to purchase this forty-acre tract and had made a small payment on the purchase price. On the 26th day of October, 1880, the Central Pacific Railroad and James O. B. Gun, and Silas W. Sanderson, trustees, conveyed the Howard forty-acre tract to Ervin Crane, the railroad company having previously received a conveyance to the same from the government of the United States.   Under the agreement with her father, E. Crane, Mrs. Howard had the equitable title to the land and the possession of the same, and on the 7th day of July, 1892, E. Crane made a conveyance of this Howard forty-acre tract to Mrs. Howard, the real consideration being the two hundred and fifty dollars paid to Mrs. Howard in 1876, and the further agreement between E. Crane and Mrs. Howard.   This latter conveyance, therefore, was in no sense a voluntary conveyance, but was upon a good consideration.

IV.   The relations of E. Crane and Mrs. Howard cannot be more concisely or forcibly stated than they are stated by Judge Cheney in his decision in the case, and we incorporate as a part of this brief his language as follows, to wit:   "It is clear by the deed of February 19, 1876, Crane conveyed to Mrs. Howard whatever title and interest he then had in this land, and he had surrendered possession of it and it was in the possession of her tenant, E. O. Crane, before he assumed any liability to the plaintiff.   When he made that deed he transferred his interest in the contract with the company, and although the patent to the land did not issue to the company until subsequently, yet the legal title to this land passed to the company at the date of the grant and became fixed at the time the route was definitely fixed, and this appears by the recital in the deed from the company to Crane given long prior to his deed to Mrs. Howard.   (*Deseret Salt Works Co.* v. *Tarpey*, 142 U. S. 248.)   Mrs. Howard, as the

assignee of Crane and the purchaser for a valuable considera-
tion and in possession, acquired the equitable title to this
land and could have compelled a conveyance to her by the
company of the property.   Whatever title Crane, therefore,
acquired he was bound in equity and good conscience to
transfer to her as he did in July, 1892.   A transfer by the
holder of the legal title to the equitable owner, although
without any pecuniary consideration, is not voluntary and
therefore fraudulent as to creditors.   (*Schreyer* v. *Scott*, 134
U. S. 406; *Cottrell* v. *Smith*, 63' Iowa, 760, 18 N. W. 865.)   A
transfer which the law would compel a party to make is not
voluntary.   (Bump on Fraudulent Con. 249; Transcript,
vol. 1, pp. 227, 228.)

V.   The deed of E. Crane to Mrs. Howard was for two
hundred and fifty dollars and the agreement entered into in
addition.   Under the contract of E. Crane with the railroad
company prior to 1876, he acquired an equitable interest in
the land.   The deed to Mrs. Howard of 1876 conveyed this
equitable interest to her.   Therefore, when the railroad com-
pany acquired the legal title from the government by rela-
tion, it dated back to the date at which the company became
equitably entitled to the land, and when the company con-
veyed the land to E. Crane the title of Crane under the deed
by relation dated back to the date of the original contract
between Crane and the company, and the deed of 1876 to
Mrs. Howard by relation vested this title in her.   (*Crane* v.
*Salmon*, 41 Cal. 63; *Thompson* v. *Spencer*, 50 Cal. 532.)

VI.   Counsel for plaintiffs contend that after Crane made
the conveyances to his daughters he acquired title to the two
forties conveyed by adverse possession.   Title cannot be
acquired by adverse possession unless it is open, notorious,
exclusive and adverse to all the world and especially to the
true owner.   There never was a day from the 19th day of
February, 1876, until the present time that E. Crane was in
possession of the premises adversely to defendants.

By the Court, MASSEY, J.:

We are asked to dismiss the appeal upon the ground that
the notice of motion for a new trial was not filed within the
time required by law.

The proceeding is one in equity, and the trial court called a jury, to which was submitted one special issue of fact, and the finding of the jury upon this question was adopted by the court. Assuming that the trial was within the rule requiring notice of motion for new trial to be given within five days after the rendition of the verdict, or requiring that any order extending the time within which such motion might be made should be obtained within five days after the rendition of such verdict, the respondents, not having waived their right to make the motion in this court to dismiss upon the grounds above stated, contend that the order extending the time in which to make the motion was not made within the time required, and is therefore void, and, the notice of motion not having been given within the time, the trial court had no power or authority to act in the proceeding.

This court has decided that the rule relied upon by the respondents does not apply to proceedings of this character. It has been said by the court that: "In a chancery suit the action is not tried until the verdict has been sanctioned and established by the chancellor. In this case it was not tried until after the argument of counsel as to what the judgment should be. There is nothing in the transcript showing that the court submitted to the jury anything but the special issues stated, and, it being a case of purely equitable cognizance, we cannot presume the court called the jury for any other purpose except to be advised by it. Certainly, the fact that the jury found against the plaintiff upon the issues submitted to them was necessarily no proof that the court would finally so find after argument, or that the court would find against him in any respect. We think this cause was tried by the court. If we are correct in the conclusions already expressed, the court should have filed his findings within ten days after the trial, either adopting or rejecting the findings of the jury. By its acts it did so in effect. Our opinion is that the plaintiff not only had a right to think he had ten days after findings were filed by the court in which to give his notice, but that he in fact had that length of time after the court rendered its judgment for costs against him on the 3d day of December." (*Duffy* v. *Moran*, 12 Nev. 98.)

Under the rule just quoted the order extending the time and the notice of motion for a new trial were within the time required, and the motion to dismiss will therefore be overruled.

This action was instituted by the appellants to set aside certain conveyances to real estate in Washoe county, Nevada, made by one E. Crane to his daughters, Mrs. Amelia Howard and Mrs. A. G. Stiles, and subject the same to the payment of a judgment in favor of the appellants and against the said E. Crane. It is claimed by the appellants that these conveyances were made without any consideration, and for the purpose of cheating and defrauding the creditors of the said E. Crane, including the appellants. Judgment by default was taken against the respondents Mrs. Howard and Mrs. Stiles, which was afterward, upon their motion, set aside, and an appeal taken by Stanton, Thompson & Co. from the order vacating and setting the same aside. This court, upon such an appeal, affirmed the order of the district court, and upon a trial of the issues subsequently had therein findings and a decree were entered in their favor. A motion for a new trial was interposed. The same was denied, and from the decree and order denying the new trial this appeal has been taken.

The material facts, briefly stated, and not disputed, are that on February 19, 1876, E. Crane conveyed to his daughters, the respondents in this appeal, two forty-acre tracts of land, then constituting a part of a ranch then owned and occupied by him in Washoe county, Nevada. The tracts of land so conveyed were held by Crane under a contract of purchase from the Central Pacific Railroad Company, the lands being within the twenty-mile limit of the grant to that company, and in odd-numbered sections. Subsequently the purchase money was paid to the railroad company, and on the 15th day of December, 1876, the patent of the United States for these lands was issued to the company, and on October 26, 1888, the company gave its deed therefor to the said E. Crane. On the 10th day of May, 1892, E. Crane became surety on an agreement of guaranty with the plaintiffs upon which a judgment was entered against him on the 8th day of October, 1892, in favor of the plaintiffs for the

sum of $3,217 59 and costs. On July 7, 1892, E. Crane made a grant, bargain, and sale deed to Mrs. Howard of the same lands; the deed of February 19, 1876, to her being a quitclaim deed. Upon the judgment rendered against E. Crane in favor of the appellants execution was issued and returned unsatisfied.

Upon the trial of the action the court submitted to a jury the following question: "Was the deed of E. Crane to Mrs. Amelia H. Howard of the S. E. ¼ of the S. E. ¼ of sec. 21, dated July 7, 1892, made with the intent on the part of said E. Crane to hinder, delay, or defraud his creditors, including the plaintiffs herein?" to which question the jury answered, "No." In its findings of facts the court adopted the verdict of the jury, and specifically found in favor of the respondents upon all issues made.

Under the assignment of errors counsel for appellants contend that the evidence shows that these conveyances were made for the purpose of defrauding E. Crane's creditors, including appellants; that they were without consideration —mere voluntary conveyances; that there was never any change in the possession of the lands after the execution of the conveyances; that the grantor, E. Crane, continued after the conveyances to hold the lands adversely to any claim of right of the respondents from the time of the conveyance until the commencement of the action; that the execution of the conveyances practically stripped E. Crane of all property subject to execution, and therefore, as a matter of law, were void as against existing and subsequent creditors, and should be set aside.

These facts were not undisputed, and upon the trial the court specifically found upon the issues all the facts in favor of the respondents and adversely to appellants' claim. The record discloses evidence both in favor of and against the contention of the appellants. It was the duty of the trial court to find the true facts from the evidence, and where such findings have been made upon a record showing a material conflict in the evidence, this court will not disturb such findings or a decree founded thereon. It therefore becomes unnecessary to discuss the rules of law controlling such cases, so exhaustively presented in the briefs.

But one other question remains to be considered. The appellants claim that the second conveyance, under date of July 7, 1892, to Mrs. Howard, for the same lands contained in the quitclaim deed of February 9, 1876, is shown to have been voluntary, and without any consideration, and, as the quitclaim deed did not convey the after-acquired title of E. Crane from the Central Pacific Railroad Company to the lands, that the lands were therefore subject to the payment of appellants' judgment, and the court should have so found and decreed. At the time of the execution of the quitclaim deed, in 1876, E. Crane had a contract for the purchase of the lands from the Central Pacific Railroad Company, they being within the twenty-mile limit of the grant to that company, and the odd-numbered sections.

While it is true that the Central Pacific Railroad Company did not receive the United States patent for the lands, yet, as a matter of law, the title thereto had passed to the company at the date of the grant, and became vested at the time the route of the road was definitely fixed—a long time prior to the execution of the quitclaim deed to Mrs. Howard. (*Deseret Salt Co.* v. *Tarpey*, 142 U. S. 248, 12 Sup. Ct. 158.) The conveyance of this land by the quitclaim deed, for a valuable consideration, and the surrender of the possession thereof to Mrs. Howard, certainly operated as a transfer of the equitable title thereto, and the subsequent transfer in 1892 therefore cannot be said to have been a mere voluntary conveyance without consideration. Mrs. Howard, under the facts, could have compelled the conveyance in a court of equity.

A transfer which the law would compel a party to make is not voluntary. (Bump, Fraud. Conv. 249.) Neither is the transfer by the holder of the legal title to the equitable owner, although without pecuniary consideration, a voluntary conveyance, and therefore fraudulent as to creditors. (*Schreyer* v. *Scott*, 134 U. S. 406, 10 Sup. Ct. 579; *Cottrell* v. *Smith* (Iowa), 18 N. W. 865.)

The judgment and order appealed from will therefore be affirmed.